Good morning, Your Honors. May it please the Court, my name is Dulce Velazquez and I'm a certified law student from Southwestern Law School. I represent the petitioner Wenjin Liang under the supervision of Professor Andrew Mapp. I would like to reserve two minutes for rebuttal, if that's okay. Your Honors, the Supreme Court has rightfully stated, if men must turn square corners when it deals with the government, then it can't be too much for the government to turn square corners when it deals with them. Accordingly, this Court should vacate Wenjin's removal order and instruct the BIA to terminate removal proceedings for two main reasons. First, this Court should not remand for the BIA to reassess removability because the government has already definitively ruled on Wenjin's case and has twice failed to establish his removability by clear and convincing evidence. Second, the BIA's special expertise is not invoked to entitle it to remand under Chevron deference because the statutory text alone is enough. And the statutes that we'll be talking about are 8 U.S.C. 1229 parens A1F, hereafter the notice statute, and the interplay with 8 U.S.C. 1229 a parens B5D, hereafter in absentia removal statute. Upon reviewing the in absentia removal statute, this Court will be compelled to conclude that DHS did not prove Wenjin's removability by clear and convincing evidence. Can I stop you there and just ask this? I think the government concedes that it failed, or at least that the agency failed to conduct the analysis correctly and that they're not trying to say that they win, that the government wins on that point, but rather that, you know, asking us just to send it back so that the agency can use the correct burden of proof, right? Correct. They're asking for a remand stating that they need to clarify because they improperly shift the burden of proof to Wenjin when the burden of proof falls on the government to establish. But even in all of the briefing, you see that they essentially say that he was found removable. One, because the evidence is the asylum application. And the asylum application does not include his school attendance in the United States. So they say because there's no school attendance, you're removable. And also, you didn't show us that you're not removable otherwise, so you're removable. So a remand for that reason wouldn't be proper because they have definitively stated that he's removable. But the evidence is far from clear and convincing. Well, okay, I guess I'm just trying to figure out. I don't think you can lose on this argument in light of what the government has conceded, but it's a question of, well, what are the consequences of this? So I think what they're saying is that, sure, if the burden, well, their position, I think, is that if the burden were on your client to prove that he wasn't removable, then maybe whatever they produced in terms of the discrepancy from the asylum application would be enough. But I think they're acknowledging that that was not the correct way to frame it. It has to be reanalyzed. And it seems to me the main question is, does the government get another chance to present more evidence that your client was removable back then, or are we just sort of stuck with the four corners of the record we have now? We're stuck with the four corners of the record now because they have. What is your authority for that proposition? Well, because the record is complete, and throughout the time, all the evidence has already been submitted. And at this point, the government has not submitted anything. And they have the opportunity to do so, and that's especially true when they have access to the SEVIS database, which is the database that holds all of the information for students who are here on a student visa that has their address. Because the schools are required to report that the students are still registered, and they have access to that. And they could have easily have done that at the end of central removal hearing, which they didn't do. And each time that they have gotten this case, the record is complete. Even our client has also submitted everything that is in the record for him with USCIS and all of DHS. And we submitted pages that even redacted showing that it's possible that SEVIS is there, just that it was redacted to us. So the government had its opportunity to do that, and they shouldn't get another opportunity to endlessly essentially go remedy their mistakes. So would the government have to move to reopen? Like, what is the procedure for adding to the record once the in absentia order is entered? At that point, the record is closed. And then in the motion to terminate, that's when it was added, the record was added. But essentially, the authority is that they have to work with what the record is. And if it's essentially wrong or incomplete or lacks evidence, then that's the end game. They don't get to essentially then supplement. So they lost from the beginning because they just didn't do what they were required to do, which is to establish removability by clearing convincing evidence. They just used the asylum application that failed to include his school attendance as the evidence. Let me ask you a question. If we were to agree with you and to say that they terminated the proceedings, could they reinitiate removal proceedings and establish now that he's not attending the school? Essentially, they could. They could start over, and they could correct the notice to appear, which essentially as of now states that he was removable from the moment he stepped foot into the United States, which is absurd considering that students on a student visa are allowed to come months way before school is actually commenced. And they could, although I think that the argument that there would be just res judicata. Why would it be res judicata if they were relying on the fact that he wasn't in school now? Well, they would have to. It would be res judicata because they're in violation of the student visa, and they would have to essentially, like I mentioned, start over. But the statute that they would be quoting would be for failure to comply with his student visa, which they already had the opportunity to do that. But wouldn't it be based on new conduct? Like if he's not in school now, that would be new conduct. That would be basis for a new effort to remove him potentially. I don't understand why it would be res judicata from, it couldn't have been argued back then, the same thing if it was that he was doing it now. Correct. And it's possible that that might be the route that they can take. But again, that goes to that they would have to start over. So it would be terminating these proceedings because they shouldn't just get the opportunity to remedy the mistake now. They should essentially follow what the statutes order them to do and follow the rules. Could I ask you, so I understand you want termination as a remedy for this issue of not showing that he was removable. But if I understood your brief correctly, it seemed like you might have been suggesting that termination would also be a potential remedy on the notice issue. So where our court said reconsider this issue based on his affidavit about the notice, and then they don't. And now you say they've had too many chances. Are you saying that termination is a remedy for that argument too, or is it a different remedy at that point? We're asking for termination on that issue as well. Because remanding would be unnecessary because the BIA's special expertise under Chevron deference isn't required in this instance. Because the statute is unambiguous. And the Supreme Court in Pineda and Mis-Chavez, in their mode of analysis there, they played with the same notice provisions there, and they stated that the statute was clearly unambiguous. And that it was, we have to put aside administrative convenience and hold the government to its high standard and to apply what the written statute says. And here, again, they didn't. So a remand would be unnecessary because this court has the power to apply Congress's clear intent. So do you have authority, though, that says that this lack of notice would lead to termination as opposed to just rescission of the removal order? Like, I understand why it would say this removal order, this in absentia removal order is no good because you didn't have notice before at that point. But if you just get rid of that, we'd be back sort of to the removal proceeding. And it wouldn't be terminated. It would just kind of go back to where they didn't have an in absentia problem, but it would still be going. And I'm trying to figure out which one of those it is. And it seemed like you are saying termination is the remedy, but do you have authority that that's true for notice? Well, I would say that the 12th, the rescission statute, because it gives you guys the opportunity to analyze whether notice was proper, that that inherently also gives the authority to terminate proceedings. And if it did start over to square one before the IJ, essentially we would also still be possibly getting the same thing because under the current Doyle memos and everything that's going on right now, wedging is not a priority for enforcement, and they would most likely agree to then terminate proceedings then. But I think that it's still within this court's power to terminate because you're also able to review it. So to review it. We're just taking that by implication. We don't have any authority that directly says lack of notice could lead to termination. Correct. Can I just ask, following up on that, I gather if we were to agree with you on the first argument, we would just not need to deal with the notice issue at all. Is that right? Essentially, yes. Either issue would, we believe, would win, especially because the removability, it's clear there that the government did not establish by clear and convincing evidence that he was removable, but also on the notice issue, the government doesn't need a remand because, like I mentioned, the statute is clear there that notice must be sent to, the input must be established in person, and if that's not practicable, by mail to an address that complies with 1229A1F. And this court has held before in Franco that an address on an asylum application is not an address that complies with 1229A1F. How do you comply with that statute, then? Do you have to prove actual notice? Yes. You would have to prove actual notice, and that can be done when it's done in person. You know that you personally gave the notice to the individual. When it's by mail, it has to be confirmed, and when the noncitizen shows up at proceedings, then we can say that address that we relied on is correct. Is that the only way to confirm it? Yes, I would say so, because the MTA is like a charging document in criminal proceedings. So Congress's intent is that a noncitizen is actually aware of proceedings, and being able to go to this issue of there's a construction, you can charge someone with notice because they're constructively aware of proceedings, goes completely. But that's not constructive notice. No. That's not possible at all. No. No, because the intent of Congress is that an individual is aware that proceedings are going on. But he admits that that was his address. Well, then that would be different, because we know that he did receive it, and if he failed to show up, that is different from him saying, I never received any notice, which is what Wenjing did. But admitting that his address doesn't necessarily mean that he received it. He just says, yes, that was my address. You know, I wasn't home. My sister picked it up. Correct. Perhaps those circumstances, do you actually have to show that he got it in his hands? I believe that he would have to show that a reasonable person fell into his household, and I think there's case law on that. But when it comes to the issue of whether the address is even correct and it's not correct, then you have to pursue, you have to show actual notice. If it's correct, then that's fine. Possibly, yes. But Wenjing does not admit that it's correct. He says he never received anything. So here he has to show actual notice. The address that he listed on the asylum application is not the address that he ever lived at. No. It wasn't Wenjing's address. You know, as you can see in the record, he hired a notary to help him file an asylum application, and he completed an affidavit months before the asylum application was actually sent in to USCIS, and he constantly throughout the record says that, I was told that I would be informed of anything that I need to do, essentially go to an interview or any notices that I receive. And he'd never heard back from, and the notary ran off with this money. I just don't remember him ever saying that I never lived at the address that I listed on the asylum application. Right, so the BIA essentially took that as I never received any notice, and therefore the address is in dispute. I mean, it's certainly possible if you live at an address that still not received something there. Absolutely. Why don't you pause here, save the rest of your time for a while. We'll hear from the government, and we'll give you a chance to respond. Thank you. Okay.  Thanks, Your Honor. I'd like to echo other government's counsel's thanks to the students for participating today, and may it please the Court. I, to start, the government is not asking the Court to remand proceedings to the Board so that it may reconsider any of these issues, but so that it may consider them in the first instance, so that the Board can consider them in the first instance. And we'd ask that the Court even provide clarifying language about precisely the issue to be considered, and I would respectfully propose that the first issue with respect to the notice is whether the INA requires actual receipt of an NTA by a noncitizen before an in absentia order may be issued. I think the Court's questioning of the petitioner in this case really clarifies that there's still a sort of ambiguity between actual receipt, that is, actual receipt by the individual applicant, and household receipt, which the Board has called constructive notice. Actual receipt of someone else in that household, which the Board has suggested may be sufficient. And so in matter of GYR, the Board said that. Right, exactly. And the Board, after making a lot of hay, that receipt of the applicant, knowledge of the notices therein was required, also then said that constructive notice is possible, and notice of someone else, a responsible adult in the household, may also be sufficient. And so that sort of ambiguity is still right for the Board to decide. Are you asking us basically to remand so that the Board can reconsider GYR? Because it seems like the Board could just reconsider GYR anywhere, the Attorney General. I mean, why do you need us to remand for GYR to be reconsidered? I guess just only because the Board hasn't clearly really laid out which of those two things it's finding that the applicant didn't prove he didn't have. It definitely doesn't need the Court to remand or even explicitly. But here, at least from the petitioner's arguments and from the record, there seems to at least be a factual that that distinction matters. And so that legal conclusion is primary before reaching those factual conclusions. We don't even get to this, though, if he's not removable, right? So could you help me understand whether the government believes that it should have another opportunity to put in more evidence that he wasn't a student at the time, or what you think should happen on that issue if it's remanded? Yeah, of course, Your Honor. And thank you again for those clarifying questions to the petitioner. I think it helps sort of suss out, and I would like to clarify what our position is on that. Thank you. If the Court were to agree that the Board should consider whether DHS met its burden to establish removability, then on that remand, the record would be set to the evidence that DHS presented to the immigration judge. So we already have the full record that it would be considered based on. Yeah, the question is whether at the immigration court level DHS established removability. If the Board were to say no and remand to the immigration court, then the record would be open, and DHS would have the opportunity to present more evidence. I don't understand that.  If you're saying that what we have before us is a record that I would submit to you is inadequate if the government, I mean the government does bear the burden, it's not adequate by clear and convincing evidence. So I would suggest to you that the record we have before us now is not adequate to establish that he's removable. The BIA was given a chance to address that issue. It's basically messed up the analysis by reversing the burden of proof. But if you're saying that we're kind of confined to that record, why wouldn't we do exactly what the petitioner asked us to do, which is to declare that the finding of removability was not supported by substantial evidence, do what we did in Al Mutarab, and terminate the proceedings. And then you're free, the government's free to start all over again, issue a new MTA, and go forward from there. Maybe he's still removable on some new basis. But that to me seems like the pretty obvious outcome here, and I need to hear from you why that's not correct. Of course. Two points. First, I'd like to clarify what I just said, and just that whether the record would be open at the immigration judge level would depend on what the board on remand found. If it found it wasn't and terminated, then the case is over. But if it found it wasn't and remanded, then it would be open at this point. Can you just explain that? What could the board possibly say at this point about how there's enough evidence? Or I don't understand what it would say that would cause a remand to the IJ on an open record. Can you explain what that would look like? I don't really know, and this might be a hypothetical thing that I wanted to cover, because I'm not quite being as clear as I'd like. So if you don't mind, I'd like to get to it. Well, I think the judge's other question, the actual question of Judge Watford, I actually don't really know what authority the board would cite for that finding and that consequence. I was just trying to be inclusive of sort of when the record would be open and when the record would be closed. To get to Judge Watford's actual question, why don't we just do what we did in El Moutared here, we argued in our brief and continue to argue that the circumstances of El Moutared are meaningfully different in that the record there unambiguously contained a temporal impossibility wherein the data or lack of data on the asylum application couldn't possibly support the notice to appear. But that impossibility does not exist here. So it seems to me, maybe I'm misunderstanding, but what I was trying to clarify is related to that answer you just gave. Because we could discuss whether it's impossible or not, but let's put that to the side. If we're bound by this record, there is no evidence that he wasn't a student as needed. You have not met your burden. So the only way that we shouldn't be terminating now is if you have some way to reopen the record. And when I asked you about that, you said, I can't explain it. So can you try again to explain how there's any way this record could be reopened? Or something that gives more evidence? I cannot answer that, but I think also another point I wanted to make is related in that in El Moutared, the court was reviewing for substantial evidence, which necessarily implies that there was a factual finding made to review. And that's sort of the crux of our argument, that this is the finding of whether the DHS met its burden of removability is a factual finding that the applicant raised first to the board. And the board, we are conceding, did not address it. And so the court needs to review that so that the board may address it first. But the board did address it. It applied the wrong burden of proof, and it found there to be sufficient evidence that he was removable. But just under the wrong burden of proof was shifted to him. So there's a finding, and I guess I'm still, I don't know, but I still have not figured out what your answer to Judge Friedland's question is, which is the question that I'm trying to figure out as well. It's confined to this record, which I think you said we are, that it is just left to us now to declare one way or the other, it seems to me, whether the evidence is sufficient under the burden properly applied. And it most definitely is not. Notwithstanding the little factual difference you pointed out between this case and El Moutared, if the government bears the burden by clear and convincing evidence, there is no way in the world that the asylum application, which is not key or short, tell us all of your dates of attendance in school, if that was the purpose of the form. The purpose of the form is something totally different. So you're not going to be able to take from a negative inference from the absence of something that he put on the asylum application that there's clear and convincing evidence that he was never in school during the relevant time period. That is just not, I don't think if we were managed at the board to apply the correct standard, there's only one outcome that could be upheld, and that's that he's not removable. So shouldn't we just declare the proceeding is terminated and, again, allow you to start all over again? Well, again, my very narrow, my reading of El Moutared is that that possibility is not foreclosed. There is a footnote where the court explicitly does not find that the information on that application is necessarily insufficient. And the warnings on that asylum application itself, again, which the petitioner signed under penalty of perjury, so presumably he read it, tell an applicant that anything they put on there may be the basis of entering removable proceedings or a finding of removability. And so the petitioner was, at least on notice, arguably the lack of evidence, especially where the petitioner doesn't seem to allege that the entire application was fabricated. I think it is our position that that could, when assessed with the right burden in place, establish removability in this case. Okay, but just looking at the application and the question for signing the question, it's a direction. It says provide the following information about your education, beginning with the most recent. So he puts down schools that he's actually completed studies at. And that, to me, isn't a crazy interpretation of the question or the statement in the asylum application. All I'm saying is that it's not crystal clear to someone filling this out that you are required, under penalty of being found to be removable if you screw this up, that you have to put down the school that you're currently enrolled in, right? So that's what I'm saying. If, again, the standard is clear and convincing evidence, and the government bears the burden, I just don't think the negative inference that you draw from this application, because there's nothing else, right? There's not some other evidence that we look at. Not as a record at this moment, yeah, not in the record at this moment. There's no way that we could declare that to be sufficient, and there's no way I don't think the board on remand could declare that to be sufficient if the government is not permitted to supplement the record with something more. And it seems like the petitioner acknowledges the point. It sure would have been easy for the government to come up with some more evidence, because apparently there's this database that you could have just put in his name and spit out an answer. But if we're confined to this record, I don't know. And I understand, of course, the question. I'm sorry for misunderstanding the question. But, yeah, if the court essentially, right, like there is an exception, a very narrow exception to our request, right, that the court remand for consideration of issues that the board has not yet considered, and that is when there is only one possible outcome. So if the court concludes that that is the only possible outcome, then our argument that remand is the appropriate remedy does fall apart. And I, of course, concede that to the case law. And one other thing that I wanted to – Wouldn't you need to have had evidence about when school started in January? I mean, their point that he didn't need to have started school consistent with his visa seems like a pretty compelling point. So even if we assume that he would have understood this form to say you need to list your current school, it's not clear he needed to be in the current school yet. So how do you answer that? It's a good point, for sure. And it's certainly the – I guess to prove anything, no one is required to provide the best evidence of something, but they certainly are in DHS where it's a burden, as Judge Walker cited, to show this compelling evidence. And so, again, if the court concludes that the only possible analysis of this information is that it's not compelling, then termination is the appropriate remedy. I would like to clarify, with respect to the notice issue, again, completely acknowledging that if the court resolves this case on removability, that they don't have to get there. But I did want to clarify a factual question that the court asked about the record, and that is Lieng never asserted that he did not live at the following lease address. And, again, when it comes to this household receipt or actual receipt, if that matters, then that gap in the record also matters. And to just conclude, I'd like to reiterate the points in our brief, that the way these statutory provisions interplay amongst each other is certainly ambiguous enough that the board, if the court thinks this issue is worth reaching, should reach in the first instance. Thank you, Your Honor. Okay. Thank you very much. I appreciate your argument. You have a little bit of time left for rebuttal. We're happy to hear anything further you might want to say. Thank you. The BIA says that they had never asserted anything, and therefore they need remand, especially to the issue of removability. But in AR 6, the BIA denied Wenjing's motion to terminate, agreeing with the IJ, that Wenjing was removable because notice was proper, and removability established by clear and convincing and unequivocal evidence based on information in the notice to appear, the hearing notice, and the asylum application. So they did make a decision, and for removability, that is with the asylum application, that failed to include his attendance of school in the U.S., which, like an al mutarab, is far from clear and convincing evidence. And the government says that al mutarab is significantly different, but we actually say that our case is much stronger than al mutarab. Because if I remember correctly, an al mutarab, the notice to appear was given once he was actually out of the, when he went to his asylum interview, he was probably already out of status, because he actually had an end date to his student visa. In our case, Wenjing was admitted for duration of stay, which means that so long as he is enrolled in any school, he is allowed to be in the United States. So the mere fact that he, one, was charged with removability from the moment that he set foot, but rather that he was allowed to be in school essentially indefinitely and remain here in the United States, is also why our case is much stronger than what the facts in al mutarab are. And on the last note, with the notice issue, there's no evidence that anything was actually received. The government also didn't show that anyone received it. You know, it's very possible that they could have sent a certified mail or anything, anything, but there was nothing that actually says someone received notice. And Wenjing was clear that he didn't receive anything. And for those reasons, this court should terminate proceedings. Okay. Thank you very much. Let me extend the same thanks again to your predecessors there. We are incredibly grateful for your willingness to take on this case. You've done a fabulous job here for your client, and you've done a great service to the court as well. Thank you very much. The case just argued is submitted.
judges: WATFORD, FRIEDLAND, Amon